DANIEL MILLER, and others, trading as DANIEL MILLER & CO. vs. JOSEPH LEA, and others, trading as JOSEPH LEA & CO.

*Right of a Del credere Agent to sue persons dealing with his Agent—Claim of Set-off by one Purchasing from the Agent of an Undisclosed principal — Construction of Article 3, section 7 of the Code, relating to Agents or Factors— Rights of persons purchasing from the Agent of an Undisclosed principal.*

L & Co. were *del credere* agents for the sale of "Simpson's Prints;" quantities of these goods they shipped to G. O & Co., commission merchants and factors in Baltimore, to be sold. D. M & Co., merchants in Baltimore, loaned certain sums of money to G. O & Co., and afterwards purchased of them several parcels of the "prints" on time. At the time of the purchase D. M & Co. were aware that G. O & Co. were commission merchants selling goods on commission, and that they were agents for the sale of "Simpson's Prints," but the name of L & Co. did not appear in the transaction, and D. M & Co. were not aware that G. O & Co. were agents of L & Co. G. O & Co. failed, and immediately D. M & Co. were notified to pay the amount of sales to L & Co , and not to G. O & Co., and upon their declining to recognize this claim, suit was brought against them. HELD:

1st. That L & Co. were entitled to maintain their action against D. M & Co.

2d. That D. M & Co. could not set-off a claim due them from G. O & Co., as against the demand of L & Co.

3d. That section 7, of Article 3 of the Code, in relation to agents and factors, did not apply to the present case.

Where a principal permits an agent to sell as apparent principal, and afterwards intervenes, the buyer is entitled to be placed in the same situation at the time of the disclosure of the real principal, as if the agent had been the real contracting party, and is entitled to the same defence, whether it be by common law or by statute, payment or set-off, as he was entitled to at that time against the agent—the apparent principal.

Miller & Co. *vs.* Lea & Co.

But if the character of the seller is equivocal—if he is known to be in the habit of selling sometimes as agent and sometimes as principal, a purchaser who is aware of this and makes no inquiries as to the capacity in which the seller acts, will be denied the benefit of his set-off, if it should turn out that he has bought of an undisclosed principal.

APPEAL from the Superior Court of Baltimore City.

The facts are sufficiently given in the opinion of the Court.

*Exception*—The plaintiffs offered the following prayers:

1st. If the jury find that the plaintiffs were the agents for the sale of the goods of the manufacturer under a contract to guaranty all sales, and that the goods in controversy were received by the plaintiffs from the manufacturer under said contract, and that the plaintiffs consigned said goods to Goodwin, Oliver & Co., to be sold on commission, for account of the plaintiffs, then the plaintiffs are so far principals or owners as to said goods, as to entitle them to bring this action in their own names.

2d. If the jury shall find that Messrs. Goodwin, Oliver & Co. were the agents of the plaintiffs for the sale of the goods mentioned in the three bills offered in evidence, dated Jan. 3, Jan. 7 and Jan. 12, 1871, and that they sold and delivered the goods to the defendants, and also shall find that the defendants, at the dates of said purchases, had reason to believe that Goodwin, Oliver & Co. were not the actual and *bona fide* owners of the goods, then their verdict should be for the plaintiffs, even if they believe that the defendants then thought that said Goodwin, Oliver & Co. were agents for the manufacturers of the goods, and not for the plaintiffs.

3d. If the jury shall find that the plaintiffs were the owners of the goods mentioned in evidence, as such ownership is defined in the plaintiffs' first prayer, and that they consigned said goods to Goodwin, Oliver & Co. for sale by them on commission, as their factors or agents, for account of the plaintiffs, and that Goodwin, Oliver & Co. sold and delivered said goods to the defendants as offered in evidence, and that before said goods were paid for, Goodwin, Oliver & Co. became

insolvent, and that the defendants received the notice of the claim of the plaintiffs for the price of said goods as offered in evidence, and that said goods have not been paid for, then the plaintiffs are entitled to recover the amount remaining unpaid of the price of said goods, less such commissions as the jury may find to have been due to Goodwin, Oliver & Co. from the plaintiffs, for sale of said goods, and that under the evidence in this case, the defendants are not entitled to the benefit of any set-off against the plaintiffs, on account of moneys loaned by them to Goodwin, Oliver & Co., as offered in evidence.

The defendants thereupon offered the following prayers :

1st. That if the jury find that the plaintiffs, doing business as merchants in Philadelphia, consigned to Goodwin, Oliver & Company, doing business as commission merchants in the city of Baltimore, certain goods to be sold by them, and that they sold said goods in their own name as principals, with the authority of the plaintiffs, to the defendants, and that the defendants dealt with Goodwin, Oliver & Co. as, and believed them to be, the principals in the transaction; and if the jury shall further find, that before the said defendants had any knowledge or notice that said Goodwin, Oliver & Co. were not the principals in the transaction, defendants lent to said Goodwin, Oliver & Co. the sum of $4,250, as stated in the evidence, and that said sum remains due and unpaid, then the defendants are entitled to set-off so much thereof in this action as shall be sufficient to settle and pay the claim of the plaintiffs.

2d. If the jury shall find the facts stated in the defendants' first prayer, and shall further find that the plaintiffs were the agents in Philadelphia for the sale of the goods, for the proceeds of sale of which suit is brought in this case, and that they represented to the defendants that they were such agents, and did not inform the defendants until after said goods were sold, and until after Goodwin, Oliver & Co. had failed in business, that they had interest in said goods, although they knew of the sale thereof to the defendants, but by their con-

duct and representations, as given in evidence, induced the defendants to believe that they had no interest in the same, then the defendants are entitled to the set-off as stated in their first prayer.

3d. That the plaintiffs cannot recover on the evidence which they have given, because said evidence shows that they were agents for the sale of the goods, for the proceeds of sale of which this suit is brought, and not the owners thereof.

4th. That the plaintiffs are not entitled to recover in this case, unless the jury find from the evidence that the plaintiffs paid to the owners of the goods, for the proceeds of the sale of which suit is brought, the price of said goods before suit was brought in this case.

5th. That if the jury find the facts stated in their first prayer, and further find that the loan therein mentioned, of $4,250 by the defendants to Goodwin, Oliver & Co., was made in a course of dealing between the defendants, and said Goodwin, Oliver & Co. acting as agents or factors for the plaintiffs, then the defendants are entitled to set-off so much thereof in this action as shall be sufficient to pay the claim of the plaintiffs.

The Court, (DOBBIN, J.,) granted the prayers of the plaintiffs and rejected those of the defendants; to this ruling the defendants excepted, and the judgment being against them, they appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, and ROBINSON, J.

*Arthur Geo. Brown* and *Geo. Wm. Brown*, for the appellants.

The appellees, after availing themselves of all the advantages, which, as a foreign firm they derived from the large business which they knowingly permitted Goodwin, Oliver & Co., to conduct in their own names and apparently on their own responsibility in Baltimore, cannot now be allowed first

to disclose themselves for the purpose of depriving appellants of a set-off, to which, in justice, they are entitled.  2 *Kent's Com.*, 632; *Smith's Mercantile Law*, (3d Ed.) 202, 203, 204; *Broom on Parties*, (56 *Law Lib.*,) 45; 2 *Smith's L. C.*, 642.

The contract in this case was between Goodwin, Oliver & Co. and the appellants; and the appellees being strangers to it, could not sue.

An agent may sue on a contract made by him in his own name, because it is his contract; the principal may sue, because he is the principal; but a person who is neither the one nor the other cannot.  *Lewis vs. Brehme*, 33 *Md.*, 428; *Broom on Parties*, (56 *Law Lib.*,) 44.

Here, agents not named in the contract made by their sub-agents appear in the guise of principals, to avail themselves of a privilege which in law belongs to the real and ultimate principals.  *Lewis vs. Brehme*, 33 *Md.*, 428.

The Supreme Court thus states the law in *N. J. S. Nav. Co. vs. Merchants' Bank*, 6 *How.*, 381: "The Court look to the substantial parties in interest *with a view to avoid circuity of action*, saving at the same time to the defendant, all the rights belonging to him, if the suit had been in the name of the agent."  *Oelricks vs. Ford*, 21 *Md.*, 489, 501, 507; *Ford vs. Williams*, 21 *How.*, 287, 289; 3 *Rob. Prac.*, 57; 2 *Kent's Com.*, 632; *Wilson vs. Smith*, 3 *How.*, 763, 770; *Seignior vs. Walmer*, *Godbolt*, 360; *Smith's Merc. Law*, (3d Ed.,) 152, 202, 203, 204; *Broom's Com. Law*, 539; *Broom on Parties*, (56 *Law Lib.*,) 46.

"The *real principal* may sue on a contract in which he calls himself agent of a third person unnamed."  *Roscoe's N. P. Ev.*, 12th Ed., 97; *Dicey on Parties to Actions*, 143; *Schmalz vs. Avery*, 16 *Ad. & El.*, *N. S.*, 655.

A *del credere* agent is but an agent; and he differs only from any other agent because of certain peculiar obligations to his principal which do not affect third parties.  *Houghton vs. Matthews*, 3 *Bos. & Pull.*, 485; *Bramble vs. Spiller*, 21 *L. T.*, *N. S.*, 672, *C. P. S. C.*, 18 *W. R.*, 316.

*Fisher's Digest for* 1870, *p.* 270, thus sums up the case of *Bramble vs. Spiller:*

"When a *del credere* agent sells for a disclosed principal, he cannot sue the purchaser on the contract of sale in his own name." *Fairlie vs. Fenton,* 39 *L. J. C. L. Exch.,* 107; *Roscoe's N. P. Ev.,* 12 *Ed., addenda to p.* 97; *Addison on Cont.,* (6th *Ed.,*) 598; *Benjamin on Sales,* 548; 1 *Parsons on Cont.,* (5th *Ed.*) 91; *Thompson vs. Perkins,* 3 *Mason,* 232; *Paley on Agency, ch.* IV, *sec.* 1; *Warner vs. McKay,* 1 *Mees. & Wels.,* 591; *Browne on Actions,* (45 *Law Lib.,*) 161 *Mar.,* and cases cited, *note r*; 1 *Selw. N. P.,* (13th *Ed.,*) 735; *Broom on Parties,* (56 *Law Lib.,*) 46; *Sangston vs. Maitland,* 11 *G. & J.,* 286, 288, 297.

But supposing for the sake of argument, that the appellees' first prayer was properly granted, the appellants then insist that the law is correctly laid down in their first prayer. *Semenza vs. Brinsley,* 114 *E. C. L.,* 477; 1 *Selw. N. P.,* (13th *Ed.,*) 735; *Sangston vs. Maitland,* 11 *G. & J.,* 297; 2 *Kent's Comm.,* 632; *George vs. Clagett,* 2 *Smith's Leading Cases,* 77; *Smith's Mercantile Law,* (3d *Ed.,*) 162-168; *Brown vs. McGran,* 14 *Pet.,* 479, 494, 495; *Fraub vs. Milliken,* 57 *Me.,* 63.

*Charles Marshall* and *William A. Fisher,* for the appellees.

The first proposition, arising under the first prayer of the appellees and the third and fourth prayers of the appellants, is in regard to the rights of the appellees to sue. The appellants assert that the appellees could not maintain a suit in their own names at all; or, at any rate, not without proof that they had paid their principals, Simpson & Sons, the price of the goods, before the institution of the suit. But the proof shows that the appellees were *del credere* agents of Simpson & Sons, and their relation to their principal is that of debtor. Their right to sue in such case is well established. An agent may always sue in his own name when he is answerable to his principal. *Story on Ag., secs.* 397, 398; *Houghton*

*vs. Matthews,* 3 *Bos. & Puller,* 485, 489 ; *Robinson vs. Rutter;* 4 *Ellis & Black.,* 954 ; *Dunlap's Paley on Agency,* 361.

He may sue in any case in which he has contracted in his own name, unless there is evidence of his principal's objection. *Sargent vs. Morris,* 3 *Barn. & Ald.,* 277.

The second and third prayers of the appellees state the law correctly. The seventh and tenth sections of Article 3 of the Code, (the Maryland Factors' Act,) dispose of the demand of the appellants to their supposed set-off, especially as the debt from Goodwin, Oliver & Co. to them had been contracted previously to the sales.

The Maryland Factors' Act was adopted within a year of the English Statute, (6 *Geo.* IV, *ch.* 94,) and is in most part copied *verbatim* from it, and it is remarkable that it differs from it mainly in the destruction of the set-off so completely.

But independently of the Factors' Act, the evidence does not present a case in which a set-off could be permitted. The testimony of Mr. Miller himself shows that he knew *that Goodwin, Oliver & Co. were not selling the goods on their own account, but were in fact acting as factors for some principal; he merely says he thought the principal was Simpson & Sons, and not the appellees.* A set-off never was allowed at the common law, in a case in which the party dealing with an agent knew he was acting merely *as agent,* and it is permitted only in cases in which the party claiming the set-off dealt with the agent, supposing him to be a *principal; Notes to George vs. Clagett,* 2 *Smith's L. C.,* 187 ; *Fish vs. Kempton,* 7 *C. B.,* 693, 694, (63 *Eng. C. L. Rep.*;) *Dunlap's Paley on Agency,* 325, 327; *Moores vs. Henderson,* 1 *East.,* 335 ; *Semenza vs. Brinsley,* 18 *C. B., N. S.,* 467, (114 *Eng. C. L. Rep.*)

Besides, there was collusion between Goodwin, Oliver & Co. and Miller, if Mr. Miller's statement is to be accepted, and no right of set-off could arise out of such a transaction. *Dunlap's Paley on Agency,* 326, 330 ; *Powell vs. Bradlee,* 9 *G. & J.,* 220.

ALVEY, J., delivered the opinion of the Court.

This action was brought by the appellees, merchants of Philadelphia, against the appellants, to recover the amount of an account for goods sold to the latter by Goodwin, Oliver & Co., factors and commission merchants of Baltimore, to whom the appellees had consigned goods for sale.

The appellees were *del credere* agents or factors of William Simpson & Sons, for the sale of what is known as "Simpson's Prints." They consigned to Goodwin, Oliver & Co. quantities of these goods to be sold on their account; and the latter sold to the appellants, on the 3d, 7th and 12th of January, 1871, parcels of such goods, amounting in the aggregate to the sum of $1,032. These sales were on a credit of thirty days, and before the accounts were all collectible, and before any of them had been paid, Goodwin, Oliver & Co. failed, and without accounting in any way to their principals, the appellees, for the amount of the proceeds of sale.

Immediately after the failure of these Baltimore factors, the appellants were notified to pay the amount of sales to the appellees, and not to Goodwin, Oliver & Co.; and, upon their declining to recognize the claim of the appellees, this suit was brought.

At the trial in the Court below, several prayers were offered by each of the parties, those on the part of the appellees being granted, while those by the appellants were rejected; and to which ruling of the Court, in reference to all the prayers, the appellants excepted.

By these prayers, two questions are presented on this appeal—first, as to the right of the appellees to sue and maintain the action; and, secondly, as to the right of the appellants to the benefit of set-off of a claim due them from Goodwin, Oliver & Co., as against the demand of the appellees.

The principles that must control the case are few, and appear to be exceedingly plain and simple.

1. As to the right of the appellees to sue. It is supposed by the appellants, that because the appellees were themselves mere agents, and were not named or known in the contract of sales, and Simpson & Sons might have an action for the money claimed, therefore the appellees cannot sue. But it is clear, we think, that such supposition is without foundation. The question here is, not so much as to the relation of the appellees to Simpson & Sons, as to the relation of Goodwin, Oliver & Co. to the appellees. It is clear, that as between the appellees and Goodwin, Oliver & Co., they stood in the relation of principal and agent. The goods were received by Goodwin, Oliver & Co. directly from the appellees, and were to be sold for their account. These Baltimore factors derived all their authority from the appellees, and their accountability was to them primarily. As agents for the sale of the goods, Goodwin, Oliver & Co. could raise no question inconsistent with the relation of principal and agent, as between themselves and the appellees, unless by the active intervention of Simpson & Sons. In the sale of the goods, therefore, to the appellants, Goodwin, Oliver and Co. were the agents and factors of the appellees, and the latter are entitled to all the rights of principals as against third parties dealing with their factors.

And why should the appellees not be regarded as the principals in the sales to the appellants? There is no good reason certainly for depriving them of that position, but, on the contrary, many why they should be so regarded. Consider their obligations and their relation to the goods.

By taking the goods for sale, under a *del credere* commission, the appellees became responsible for their value, and, in the absence of active intervention by the general owner, they became the virtual owners as to all third parties. They were entitled to the management, control and possession of such goods, and had full authority to sell them in their own names, and, of course, by their own agents. They were also entitled to a lien on the goods, or their proceeds, for their commis-

sions, disbursements and advances made in respect of them, as well as a lien for their general balance of accounts. They could, moreover, maintain suits in their own names for trespasses and torts committed on such goods while in their possession, founded upon their special ownership and rights therein. *Story's Agency*, secs. 400, 401. While therefore the appellees bore the relation of agents to the general owner of the goods, there is no reason that would forbid their maintaining the relation of principals to other parties, in respect to the same goods.

Regarding then the appellees as principals in the contract of sale, it is beyond all question that they are entitled to sue for the price of the goods sold, although the contract of sale be in the name of the agents actually making the sale. This is established as a clear proposition. When goods have been sold by a factor, says Chancellor KENT, (2 *Com.*, 632,) " the owner is entitled to call upon the buyer for payment before the money is paid over to the factor; and a payment to the factor, after notice from the owner not to pay, would be a payment by the buyer in his own wrong, and it would not prejudice the rights of the principal. If however the factor should sell in his own name as owner, and not disclose his principal, and act ostensibly as the real and sole owner, the principal may, nevertheless, afterwards bring his action upon the contract against the purchaser, but the latter, if he *bona fide* dealt with the factor as owner, will be entitled to set-off any claim he may have against the factor, in answer to the demand of the principal." This principle is founded upon a series of cases, at the head of which is the leading case of *George vs. Claggett*, 7 *T. Rep.*, 359. It follows therefore that the first prayer of the appellees, which asserted their right to maintain the action, was properly granted; and that the third and fourth prayers of the appellants, which denied such right, were properly refused by the Court below.

2. We come next to the appellants' right of set-off as against the appellees.

This right of course depends upon the circumstances under which it is claimed.

It appears from the testimony of one of the appellants, who was examined as a witness, that the claim for set-off originated in two separate loans to Goodwin, Oliver & Co., made on the 29th of November, and the 16th of December, 1870, before, and without any sort of connection with, the sale of the goods, the price of which is sued for. These loans were made on call; and upon being called for, after the sale of the goods, time was extended for payment, under an agreement by which notes were to be given, with the right to renew.

The same witness also proved that he knew that the appellees were the Philadelphia agents for the sale of the "Simpson Prints," and believed that Goodwin, Oliver & Co. were the Baltimore agents; but he never knew that the goods purchased by his firm came from the appellees; that their name did not appear in the transaction; that he had supposed Goodwin, Oliver & Co. to be the Baltimore agents of the manufacturers of the goods, Simpson & Sons; and that he knew Goodwin, Oliver & Co. to be commission merchants, selling goods on commission. These facts are proven by the appellants themselves, and may be taken as admissions by them.

The general proposition is well settled that "where a principal permits an agent to sell as apparent principal, and afterwards intervenes, the buyer is entitled to be placed in the same situation at the time of the disclosure of the real principal as if the agent had been the real contracting party, and is entitled to the same defence, whether it be by common law or by statute, payment or set-off, as he was entitled to at that time against the agent, the apparent principal." *Isberg vs. Bowden,* 8 *Exch.,* 852; *George vs. Claggett,* 7 *T. Rep.,* 359; *Carr vs. Hincliff,* 4 *B. & Cr.,* 551; *Sims vs. Bond,* 5 *B. & Ad.,* 393; *Fisher vs. Kempton,* 7 *M. G. & S.,* 687.

But while this is the general principle that applies to such cases, the buyer must be cautious, and not act regardless of the rights of the principal, though undisclosed, if he has any

reasonable grounds to believe that the party with whom he deals is but an agent. Hence, if the character of the seller is equivocal—if he is known to be in the habit of selling sometimes as principal and sometimes as agent, a purchaser who buys with a view of covering his own debt and availing himself of a set-off, is bound to inquire in what character he acts in the particular transaction; and if the buyer chooses to make no inquiry, and it should turn out that he has bought of an undisclosed principal, he will be denied the benefit of his set-off. *Add. on Cont.*, 1191. If by due diligence the buyer could have known in what character the seller acted, there would be no justice in allowing the former to set-off a bad debt at the expense of the principal. *Fish vs. Kempton*, 7 *M. Gr. & S.*, 687.

Here the facts are uncontroverted, that the appellants did believe, and of course acted with reference to that belief, that Goodwin, Oliver & Co. were but agents in the sale of the goods purchased by them; and that they, the appellants, knew the character of the business of Goodwin, Oliver & Co. to be that of factors and commission merchants. With such knowledge it would be rather difficult to sustain the right of set-off claimed in this case, according to the authorities upon which the right is founded.

In the recent case of *Semenza vs. Brinsley*, 18 *C. B.*, *N. S.*, 467, it was held, that a party who bought goods of a person whom he knew to be selling them *as agent*, could not set-off, in an action by the principal for the price, a debt due to him from the agent, even though he did not, at the time of the purchase, know and had not the means of knowing, who was the real owner. It was further held, that the plea of set-off was vicious, because it did not allege affirmatively that which was said to be the gist of the defence, viz: that the defendant did not know, and had not the means of knowing, that the party selling the goods was a mere agent in the transaction.

Upon the principle of the authorities just cited, it would appear to be free of all doubt, that the Court below was right

in granting the appellees' second and third prayers; and its ruling was equally correct in rejecting the first and second prayers on the part of the appellants. The second prayer of the appellants was also objectionable upon other grounds than its conflict with the principle of law to which we have referred; there was not evidence in the cause, legally sufficient, from which the jury could have found some of the facts embraced in its hypothesis.

The appellants' fifth prayer was intended to present the law, according to what was supposed to be the proper construction of the 7th section of the 3d Article of the Code, in relation to agents and factors. But we think the prayer was properly rejected by the Court below.

The section of the Code referred to was intended to apply to cases, not like the present, but where sales or contracts of sales have been made by agents, known to be acting as such, who become insolvent before the payment of the purchase money, and where the principal, whether known or not at the time of sale, may sue for and receive the money due on the sales, without being subject to any set-off that may have accrued between the person acting as agent and the buyer, "unless such claim of set-off *shall have arisen in a course of dealing with the said agent or factor, acting as such for the same principal or owner,* or from previous advances of money or materials found, or work or labor done for the use or advantage of the said principal or owner." In construing this provision of the statute, we do not concur with the suggestion made at the bar, that it was the intention of the Legislature to restrict the right of set-off as it previously existed, in cases of sales made by agents, who were honestly supposed by the buyers at the time to be acting as principals or owners. To adopt such a construction would most likely, in many cases at least, lead to deception and fraud.

But in this case, the appellants knew, or had reasonable grounds for knowing, according to their own statement, that Goodwin, Oliver & Co., were not acting as principals in fact

in the sale of the goods, but as mere agents; and as the loans were made to them by the appellants, which constitute the claim of set-off, sometime before the goods were sold, and not in a course of dealing for and on account of the appellees as principals of Goodwin, Oliver & Co., it follows that the section of the Code, under which the fifth prayer of the appellants was framed, can have no application to the case. The Court below was therefore right in rejecting the prayer.

Concurring with the Court below in its rulings on the several propositions embraced in the exception of the appellants, we shall affirm the judgment.

*Judgment affirmed.*

(Decided 18th March, 1872.)